UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IBRAHIM YOUSSIF SOUEDAN,

    Petitioner,

v.

KIRSTJEN NIELSON, ET AL.,

    Defendants.
_____/

Case No. 18-cv-13313

UNITED STATES DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

UNITED STATES MAGISTRATE JUDGE
STEPHANIE DAWKINS DAVIS

**MEMORANDUM OPINION IN SUPPORT OF COURT'S ORDER
DENYING PETITIONER'S EMERGENCY MOTION FOR TEMPORARY
RESTRAINING ORDER [#5]**

**I. INTRODUCTION**

On October 23, 2018, Petitioner Ibrahim Souedan filed an Emergency Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 to halt his deportation order. Dkt. No. 1. That same day, Petitioner filed an Emergency Motion for Temporary Restraining Order to stay his removal, which was scheduled for October 24, 2018 at 4:00 p.m. Dkt. No. 2. In the Motion for Temporary Restraining Order, Petitioner asserts that he did not receive a fair hearing in immigration court due to ineffective assistance of counsel. *Id.* at pp. 3-4 (Pg. ID 153-54).

Present before the Court is Petitioner's Emergency Motion for Temporary Restraining Order [#2]. For the reasons set forth below, the Court will DENY Petitioner's Motion [#2].

## II. BACKGROUND

Petitioner is a citizen and native of Lebanon, who initially entered into the United States on November 20, 2000 under a B-2 visitor visa. Dkt. No. 1, p. 6 (Pg. ID 6). However, Petitioner overstayed his visa, and was thus ordered to appear before an immigration court on November 24, 2004 to face removal. *Id.* Following those proceedings, the immigration judge gave Petitioner until January 25, 2005 to voluntarily depart from the United States. *Id.*

While Petitioner was still in the United States, the U.S. Attorney's Office indicted a Lebanese citizen named Mahmoud Youssef Kourani for conspiracy to provide material support to Hezbollah, a foreign terrorist organization. *Id.* It is believed that Mahmoud Kourani's brother is the Hezbollah Chief of Military Security for Southern Lebanon. *Id.* at p. 7 (Pg. ID 7).

Petitioner claims that Kourani lived with him for three months when Kourani first entered into the United States. *Id.* Petitioner further claims that he cooperated with the FBI to provide information against Kourani. *Id.* Because Petitioner provided this information to the FBI, Petitioner believes he would be subject to torture and possibly killed if he returns to Lebanon. *Id.* at p. 12 (Pg. ID

12). Under these circumstances, Petitioner's then-attorney, David Wenger, moved to reopen Petitioner's case before the immigration court. *Id.* at p. 8 (Pg. ID 8). Mr. Wegner based the motion to reopen on changed circumstances along with an accompanying asylum application for Petitioner. *Id.* The immigration judge granted the motion to reopen, relying on the allegations in the motion and the accompanying affidavits. *Id.*

Notably, the affidavits that Petitioner submitted to the immigration judge contained falsities. *Id.* Most relevant, the affidavits stated that Petitioner and his brother had testified before a grand jury in Mahmoud Kourani's criminal case. *Id.* But testimony from Assistant U.S. Attorney Kenneth Chadwell contradicted these claims. *Id.* Petitioner asserts that when his attorney, Mr. Wegner, had him sign the affidavit, Mr. Wegner did not read Petitioner the affidavit in Petitioner's native language. *Id.* at p. 9 (Pg. ID). Hence, Petitioner unknowingly signed an affidavit containing errors. *Id.*

The immigration judge ultimately denied Petitioner's application for asylum, finding Petitioner was not credible, and therefore, did not meet his burden of establishing that he had a well-founded fear of persecution by members of Hezbollah upon return to Lebanon, on account of a protected characteristic. *See* Dkt. No. 1-1, p. 68 (Pg. ID 87). The Board of Immigration Appeals ("BIA") affirmed that finding. *See id.*

Petitioner asserts that because his then-attorney submitted false affidavits to the immigration court, this destroyed Petitioner's credibility in the eyes of the immigration judge. Dkt. No. 2, p. 4 (Pg. ID 154). This, Petitioner maintains, was the reason his application for asylum was denied. *Id.* at p. 5 (Pg. ID 155). Petitioner now argues that he never received a proper hearing in immigration court due to his attorney's ineffective assistance of counsel, and thus, asks the Court to issue a temporary restraining order to stop his removal from the United States pending the outcome of his habeas petition. *Id.* at pp. 4, 8 (Pg. ID 154, 158).

### III. LEGAL STANDARD

Preliminary injunctions and temporary restraining orders are extraordinary remedies which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it. *See Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). Whether to grant such relief is a matter within the discretion of the district court. *N.A.A.C.P. v. City of Mansfield, Ohio*, 866 F.2d 162 (6th Cir. 1989). Courts will consider the same factors in determining whether to grant a request for either a temporary restraining order or a preliminary injunction. *Ne. Ohio Coal. for Homeless and Serv. Emps. Intern. Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006). Those factors are "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the

injunction; (3) whether the issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction." *Bonnell v. Lorenzo*, 241 F.3d 800, 809 (6th Cir. 2001). None of the factors the court considers, standing alone, is a prerequisite to relief; rather, the court should balance them. *Golden v. Kelsey-Hayes Co.*, 73 F.3d 648, 653 (6th Cir. 1996). But "a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. Nat'l Bd. of Med. Exam'rs.*, 225 F.3d 620, 625 (6th Cir. 2000).

## IV. Discussion

### A. Petitioner has not Demonstrated a Likelihood of Success on the Merits of his Claim.

Petitioner asserts that his former attorney destroyed Petitioner's credibility in front of the immigration judge by submitting affidavits containing false statements. Dkt. No. 2, pp. 5-6 (Pg. ID 155-56). Petitioner contends that had his attorney not made this error, the immigration judge would have likely granted Petitioner's asylum application. *Id.* Thus, Petitioner argues that he was deprived of a fair hearing on his asylum application because of ineffective assistance of counsel. *Id.* at pp. 3-4 (Pg. ID 3-4). The Court will disagree.

The "Fifth Amendment guarantees of due process extend to aliens in deportation proceedings, entitling them to a full and fair hearing." *Huicochea-Gomez v. I.N.S.*, 237 F.3d 696, 699 (6th Cir. 2001). "To constitute fundamental

unfairness, however, a defect in the removal proceedings 'must have been such as might have led to a denial of justice.'" *Id.* (quoting *Dokic v. I.N.S.*, 1993 WL 265166, *3 (6th Cir. 1993). "The alien carries the burden of establishing that ineffective assistance of counsel prejudiced him or denied him the fundamental fairness in order to prove that he has suffered a denial of due process." *Id.*

Here, Petitioner has not met his burden of establishing a denial of due process. To the contrary, the record shows that he received a full and fair opportunity to present evidence in support of his claim for relief. *See* Dkt. No. 1-1, pp. 89-95 (Pg. ID 108-114). Indeed, in the middle of Petitioner's asylum hearing, the judge addressed the fact that Petitioner had not testified in Mahmoud Kourani's grand jury proceeding, as was claimed in Petitioner's affidavit. *See id.* Yet, the immigration judge emphasized, "I will indicate that we will continue this hearing and I will hear all of the evidence. I'm not pretermitting it in any way, shape or form." *Id.* at p. 94 (Pg. ID 113). It follows, Petitioner had the chance to present his case in its entirety.

Moreover, the immigration judge's finding that Petitioner lacked credibility was based on more than just the false claim in the affidavit. *See id.* at pp. 68-71 (Pg. ID 87-90). Instead, the BIA held that "[i]t [was] based on specific, cogent reasons, including inconsistencies and an omission between testimony and the documentary evidence." *See id.* at p. 69 (Pg. ID 88). For example, Petitioner

testified that his brother in Lebanon was beaten by Mahmoud Kourani's brother and supporters of Mr. Kourani. *Id.* However, a supporting letter from Petitioner's Sister in Lebanon made no mention of any beatings. *Id.* Petitioner was not able to reconcile such discrepancies in the record. *Id.*

Even more, notwithstanding the inconsistencies in the record, Petitioner's lack of corroborating evidence supported the adverse credibility finding. *Id.* at p. 70 (Pg. ID 89). Notably, Jaafer Soueidan, Petitioner's cousin, did not testify at the hearing despite appearing on the witness list. *Id.* The immigration judge found that the cousin's absence was never reasonably explained. *Id.* In light of this, the BIA concluded that the "inconsistencies, omission and absence of sufficient corroborative evidence cited by the Immigration Judge are present in the record, and are an adequate basis for the Immigration Judge's adverse credibility finding under the totality of the circumstances." *Id.*

As an aside, Petitioner also notes that his former attorney, David Wegner, has since been suspended by the State Bar of Michigan and the Executive Office of Immigration Review ("EOIR"). Dkt. No. 1, p. 9 (Pg. ID 9). Further, that Mr. Wegner was disbarred by the State Bar of Michigan and indicted by the U.S. Attorney's Office on an unrelated matter. *Id.* Critically, it is unclear whether the suspensions and disbarment directly relate to Petitioner's case. For instance, Petitioner's asylum hearing before the immigration court took place on November

2, 2009. *See* Dkt. No. 1-1, pp. 73-95 (Pg. ID 92-114). However, the record shows that Mr. Wegner was not suspended by the EOIR until May 2012.[1] But more importantly, there is no evidence that counsel's subsequent suspensions, disbarment, and conviction impacted the fairness of Petitioner's asylum hearing.

In short, the Court cannot find that Plaintiff was prejudiced or denied due process under the law. Accordingly, Petitioner has not demonstrated a likelihood of success on the merits of his ineffective assistance of counsel claim.

**B. The Remaining Temporary Restraining Order Factors are not Enough to Overcome Plaintiff's Failure to Demonstrate a Likelihood of Success on the Merits of His Claim.**

At this juncture, it is important to reiterate that none of the injunctive relief factors the court considers, standing alone, is a prerequisite to relief; rather, the court should balance them. *Golden*, 73 F.3d at 653. However, the Court must emphasize that "a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales*, 225 F.3d at 625.

Here, the Court recognizes and appreciates Petitioner's fear of returning to Lebanon and the potential for irreparable harm. At the same time, there is a strong public interest in enforcing the laws of the United States and preventing the

---

[1] It appears that attorney David Wegner was suspended by the EOIR prior to the BIA's decision on Petitioner's appeal. Thus, it is unclear why Mr. Wegner is listed as Petitioner's counsel on the appeal or whether Mr. Wegner indeed represented Petitioner on his appeal. Nevertheless, Petitioner is challenging whether he received a fair asylum hearing in front of the immigration court, not the BIA.

Government from doing so is not without consequence. Therefore, on balance, and considering Petitioner's failure to demonstrate a likelihood of success on the merits of his claims, the temporary restraining order factors do not warrant a grant of injunctive relief.

## V. CONCLUSION

For the reasons stated herein, the Court will DENY Petitioner's Emergency Motion for Temporary Restraining Order [#2].

Dated:	October 25, 2018

               s/Gershwin A. Drain
               HON. GERSHWIN A. DRAIN
               United States District Court Judge

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, October 25, 2018, by electronic and/or ordinary mail.

               s/Teresa McGovern
               Case Manager